## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA LEVIN, | : | Civil Action |
| | : | |
| Plaintiff, | : | No. 11-3642 |
| | : | |
| v. | : | Hon. Jan E. DuBois |
| | : | |
| LOWER MERION SCHOOL DISTRICT, et al., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Date: August 9, 2011

Henry E. Hockeimer, Jr.
Paul Lantieri III
William B. Igoe
Tejal K. Mehta
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599
Tel.   215.665.8500
Fax:   215.864.8999
HockeimerH@ballardspahr.com
LantieriP@ballardspahr.com
IgoeW@ballardspahr.com
MehtaT@ballardspahr.com

*Counsel for Defendants*

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................iii

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ......................................................................................................... 3

      A.      Mr. Levin Alleges That Because The District's Investigation Recovered
            Images That Had Been Taken By His Laptop, The District Must Have
            Been "Spying" On Him ................................................................................ 3

      B.      Mr. Levin Refers To, But Disregards, The Court's Orders In *Robbins* And
            The Investigation Commissioned By The District, Which Included A
            Review Of The Circumstances That Gave Rise To The Monitoring Of His
            Laptop ........................................................................................................... 5

      C.      Mr. Levin Seeks Compensatory, Liquidated, And Punitive Damages .................. 8

III.    ARGUMENT ................................................................................................................ 9

      A.      Mr. Levin's Complaint Must Satisfy Stringent Standards To Avoid
            Dismissal ...................................................................................................... 9

      B.      The Pennsylvania Tort Claims Act Immunizes The District From Mr.
            Levin's Common Law Invasion of Privacy Claim ................................................. 10

      C.      Mr. Levin's Allegations Do Not Implicate The Wiretapping Acts ..................... 11

            1.      The Webcam Photographs From Mr. Levin's Laptop Are Not
                   "Communications" Under The Wiretapping Acts ..................................... 12

            2.      Even If The Pennsylvania Wiretapping Act Applied To Mr.
                   Levin's Allegations, The Claim Would Fail Because The Tort
                   Claims Act Immunizes The District From Such Claims .......................... 13

      D.      The Stored Communications Act Does Not Apply To Webcam
            Photographs ................................................................................................. 14

      E.      The Computer Fraud And Abuse Act's Cause Of Action Applies Only To
            Financial Loss Or Technological Damages ........................................................ 16

      F.      Mr. Levin Does Not State Claim Under Section 1983 Of The Civil Rights
            Act................................................................................................................. 19

            1.      Mr. Levin Does Not Plead A Constitutionally Protected Right............... 20

DMEAST #13946164 v3

2.    Mr. Levin Does Not Plead That The District Had In Place An Unlawful "Policy" Or "Custom" .............................................................. 22

3.    Mr. Levin Does Not Plead That The District Acted With Intent Or Deliberate Indifference ............................................................... 25

G.    Mr. Levin's Fourth Amendment Claim For Invasion Of Privacy Fails Because There Is No Such Cause of Action ....................................................... 27

IV.   CONCLUSION ......................................................................................... 28

DMEAST #13946164 v3

# TABLE OF AUTHORITIES

*Page(s)*

*CASES*

Albright v. Oliver,
    510 U.S. 266 (1994)................................................................................................20

Apodaca v. Rio Arriba County Sheriff's Departmentt,
    905 F.2d 1445 (10th Cir. 1990) ............................................................................25

Ashcroft v. Iqbal,
    556 U.S. ___, 129 S. Ct. 1937 ...............................................................................9

Baker v. McCollan,
    443 U.S. 137 (1979)...............................................................................................19

Board of County Commissionerrs v. Brown,
    520 U.S. 397 (1997)...............................................................................................26

Beck v. City of Pittsburgh,
    89 F.3d 966 (3d Cir. 1996).....................................................................................23

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................................9, 10

Bielevicz v. Dubinon,
    915 F.2d 845 (3rd Cir. 1990) .................................................................................24

Bivens v. Six Unknown Named Federal Narcotics Agents,
    403 U.S. 388 (1971)...............................................................................................27

Black v. Indiana Area School District,
    985 F.2d 707 (3d Cir. 1993)...................................................................................26

Carroll v. Parks,
    755 F. 2d 1455 (11th Cir. 1985) ............................................................................21

Chas S. Winner, Inc. v. Polistina,
    No. 06-4865, 2007 WL 1652292 (D.N.J. June 4, 2007) *aff'd*, 166 Fed. App'x 559,
    562 (2d Cir. 2006)) .................................................................................................18

City of Canton v. Harris,
    489 U.S. 378 (1989)......................................................................................20, 22, 26

City of Oklahoma City v. Tuttle,
    471 U.S. 808 (1985).............................................................................................19, 24

DMEAST #13946164 v3

Clinton Plumbing and Heating of Trenton, Inc. v. Ciacco,
    No. 09-2751, 2010 WL 4224473 (E.D. Pa. Oct. 22, 2010) ...................................................18

Colburn v. Upper Darby,
    946 F.2d 1017 (3d Cir. 1991)........................................................................................................26

Credico v. Commonwealth of Pennsylvania State Police,
    No. 09-691, 2010 WL 331700 (E.D. Pa. Jan. 27, 2010)...........................................................24

Crowley v. Cybersource Corp.,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ....................................................................................16

Daniels v. Williams,
    474 U.S. 327 (1995)........................................................................................................................25

Davis v. Bucher,
    853 F.2d 718 (9th Cir. 1988) ......................................................................................................21

Davis v. City of Philadelphia,
    No. 05-4571, 2009 WL 2461777 (E.D. Pa. Aug. 11, 2009) ...................................................24

De Falco v. Deer Lake School District,
    663 F. Supp. 1108 (W.D. Pa. 1987)............................................................................................24

Doe v. Luzerne County,
    No. 08-1155, 2010 WL 3517058 (M.D. Pa. Aug. 31, 2010) ...........................................20, 21

Estelle v. Gamble,
    429 U.S. 97 (1976)..........................................................................................................................25

Fraser v. Nationwide Mutual Insurance Co.,
    352 F.3d 107 (3d Cir. 2003)..........................................................................................................13

Guffey v. Tragos,
    572 F. Supp. 782 (N.D. Ind. 1983) .............................................................................................25

Henly v. Octorara Area School District,
    701 F. Supp. 545 (E.D. Pa. 1988) ...............................................................................................11

Huggins v. Coatesville Area School District,
    No. 07-4917, 2008 WL 4072801 (E.D. Pa. Aug. 27, 2008) ...................................................19

In re Burlington Coat Factory Securities Litigation,
    114 F.3d 1410 (3d Cir. 1997)......................................................................................................5, 7

In re Pharmatrak, Inc. Privacy Litigation,
    220 F. Supp. 2d 4 (D. Mass. 2002), *rev'd on other grounds*, 329 F.3d 9 (1st Cir.
    2003) ........................................................................................................................................15, 16

Jenkins v. Bolla,
600 A.2d 1293 (Pa. Super. Ct. 1992) ................................................................10

Klump v. Nazareth Area School District,
425 F. Supp. 2d 622 (E.D. Pa. 2006) ................................................... 11, 14, 20

Kneipp v. Tedder,
95 F.3d 1199 (3d Cir. 1996) ......................................................................... 22, 23

Lapka v. Cairns,
No. 91-2159, 1993 WL 289161 (D. Kan. July 22, 1993) ...................................22

Love v. City of Philadelphia,
543 A.2d 531 (Pa. 1988) ...................................................................................11

Mascaro v. Youth Study Center,
523 A.2d 1118 (Pa. 1987) .................................................................................11

McTernan v. City of York,
564 F.3d 636 (3d Cir. 2009) ..................................................... 22, 23, 24, 25

Monell v. N.Y. City Department of Social Services,
436 U.S. 658 (1978) ................................................................................... 19, 22

Morse v. Lower Merion School District,
132 F.3d 902 (3d Cir. 1997) ................................................................................9

Newhards v. Borders,
649 F. Supp. 2d 440 (W.D. Va. 2009) ...............................................................21

Newport v. Fact Concerts, Inc.,
453 U.S. 247 (1981) ..........................................................................................20

Nexans Wires S.A. v. Sark-USA, Inc.,
319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 Fed. App'x 559, 562 (2d Cir. Feb.
13, 2006) ............................................................................................................18

Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.,
998 F.2d 1192 (3d Cir. 1993) ..........................................................................5, 7

Robbins, et al. v. Lower Merion School District, et al.,
No. 10-665 (E.D. Pa.) ................................................................... *passim*

Rogin v. Bensalem Township,
616 F.2d 680 (3d Cir. 1980) ..............................................................................27

Sands v. McCormick,
502 F.3d 263 (3d Cir. 2007) ................................................................................6

Simmons v. City of Philadelphia,
   947 F.2d 1042 (3rd Cir. 1991) ...........................................................................26

Smith v. School District of Philadelphia,
   112 F. Supp. 2d 417 (E.D. Pa. 2000) ......................................................11, 20, 27

Sterling v. Borough of Minersville,
   232 F.3d 190 (3d Cir. 2000)................................................................................20

Turner v. City of Philadelphia,
   22 F. Supp. 2d 434 (E.D. Pa. 1998) ...................................................................23

U.S. v. Falls,
   34 F.3d 674 (8th Cir. 1994) ...............................................................................12

U.S. v. Koyomejian,
   970 F.2d 536 (9th Cir. 1992) .............................................................................12

U.S. v. Larios,
   593 F.3d 82 (1st Cir. 2010), *cert. denied*, 130 S. Ct. (2010) ...................................12

U.S. v. Steiger,
   318 F.3d 1039 (11th Cir. 2003) ..........................................................................15

U.S. v. Torres,
   751 F.2d 875 (7th Cir. 1984) .......................................................................12, 13

U.S. v. Westberry,
   No. 98-6458, 2000 WL 799787 (6th Cir. June 13, 2000)......................................13

Walker-Serrano v. Leonard,
   168 F. Supp. 2d 332 (M.D. Pa. 2001) .................................................................24

Walsh v. Krantz,
   No. 07-619, 2008 WL 3981492 (M.D. Pa. Aug. 22, 2008), *aff'd*, 386 Fed. App'x 334
   (3d Cir. 2010), *cert. denied*, 131 S. Ct. 801 (2010) ...............................................14

Whalen v. Roe,
   429 U.S. 589 (1977)...........................................................................................21

Wilson v. Moreau,
   440 F. Supp. 2d 81 (D.R.I. 2006), *aff'd* 492 F.3d 50 (1st Cir. 2007) .....................18

Woodward v. City of Worland,
   977 F.2d 1392 (10th Cir. 1992) ..........................................................................25

Young v. City of Allentown,
   882 F. Supp. 1490 (E.D. Pa. 1995) .....................................................................23

vi

*STATUTES*

18 Pa. C.S. § 5703 ..............................................................................................12, 14

42 Pa. C.S. § 8541 ..............................................................................................10, 13

42 Pa. C.S. § 8542 ..............................................................................................10, 13

18 U.S.C. § 1030 .........................................................................................16, 17, 18

18 U.S.C. § 2510 ..............................................................................................14, 15

18 U.S.C. § 2511 ......................................................................................................12

18 U.S.C. § 2701 ..............................................................................................14, 15

18 U.S.C. § 2711 ......................................................................................................15

*OTHER AUTHORITIES*

Fed. R. Civ. P. 8 ..................................................................................................9, 25

Fed. R. Civ. P. 12 ......................................................................................................9

Restatement (Second) of Torts § 652B (1977) .......................................................10

DMEAST #13946164 v3

Defendants, Lower Merion School District, the Board of Directors of the Lower Merion School District, and Christopher W. McGinley, as the District's Superintendent (collectively, the "District"), respectfully submit this memorandum in support of their motion to dismiss the Complaint of Plaintiff, Joshua Levin.

## I.    INTRODUCTION

Like prior litigation in this Court, this case arises from the District's use of software that remotely captured webcam photographs from laptop computers that the District issued to its high school students.  The very few facts that Mr. Levin alleges in his Complaint add up to little more than that.  But that background alone – as regrettable as the District has acknowledged it was – does not give rise to an actionable claim for damages.

Indeed, it is very important to note at the outset what Mr. Levin **_has not_** alleged here.  Beyond the conclusory allegation that unspecified defendants "spied" on Mr. Levin, there is no allegation that anyone from the District ever actually saw any of the images taken by his laptop.  This materially distinguishes this case from <u>Robbins, et al. v. Lower Merion School District, et al.</u> – which gave rise to extensive litigation in this Court but in which the District never formally responded to the complaint – because the <u>Robbins</u> plaintiff alleged that District personnel viewed the images taken by his laptop and confronted him with them for disciplinary reasons.  Here, in contrast, the only harm that Mr. Levin alleges arose only after he chose to take the opportunity to view the images from his laptop – an opportunity that the District provided under the auspices of the Court in accordance with injunctive relief ordered in <u>Robbins</u>.

In any event, Mr. Levin's Complaint fails to state a claim.  Six of the seven purported causes of action that Mr. Levin asserts simply do not apply here.

> 1.    *Invasion of Privacy – Pennsylvania Common Law*.  The Pennsylvania Political Subdivision Tort Claims Act immunizes local government

1

entities – including school districts – from intentional tort claims such as Mr. Levin's privacy claim.

2. *Violation of the Electronic Communications Privacy Act (the "Federal Wiretapping Act")*.  This claim requires Mr. Levin to plead that the District intentionally intercepted an "electronic communication."  But the federal courts have made clear that silent, photographic surveillance – such as the remote capturing of images that Mr. Levin has alleged here – does not intercept an electronic communication.

3. *Violation of the Pennsylvania Wiretapping and Electronic Surveillance Act* (the "*Pennsylvania Wiretapping Act*").  This claim fails for the same reason that Mr. Levin's Federal Wiretapping Act claim fails:  there was no interception of an "electronic communication."

4. *Violation of the Stored Communications Act ("SCA")*.  The SCA proscribes unauthorized access to stored communications in facilities maintained by providers of electronic communications services, such as e-mails stored on an Internet service provider's server.  Mr. Levin has alleged nothing of the sort.

5. *Violation of the Computer Fraud and Abuse Act ("CFAA")*.  The CFAA generally prohibits malicious hacking into government or financial computer systems and provides a private right of action for unauthorized access to computers used in or affecting interstate commerce.  And the statute expressly limits such an action to situations in which the plaintiff suffered financial "loss or damages" to the integrity of computer data or programs – *i.e.*, a type of harm that Mr. Levin does not and cannot claim.

6. *Invasion of Privacy – Fourth Amendment*.  There is no such standalone claim; the exclusive vehicle for bringing an action against a government entity for violating a constitutional right is Section 1983 of the Civil Rights Act.

Mr. Levin's seventh claim, brought pursuant to Section 1983, also should be dismissed.  The Complaint does not plead the deprivation of any cognizable constitutional right.  In addition, the Complaint does not allege, as a Section 1983 claim against the District requires, much less with the level of plausibility required by Twombly and Iqbal, that the District had in place an unlawful policy or custom, or that the District intentionally deprived Mr. Levin of, or acted with deliberate indifference to, a constitutional right.  Instead, Mr. Levin assumes that the District was "spying" on him based solely on the fact that the District recovered images from a

2

computer server in the investigation that the District commissioned in the wake of the <u>Robbins</u> litigation.   This threadbare factual pleading merely raises the ***possibility*** that the District acted with the requisite level of intent, and therefore falls short of the line that the Supreme Court has drawn between possibility and ***plausibility*** of liability.  While the Section 1983 claim therefore is dismissible on its face, it bears noting that Mr. Levin disregards the more plausible scenario surrounding the monitoring of his laptop that is described in the public report of the District-commissioned investigation:  the District activated its monitoring software after Mr. Levin's laptop was stolen and neglected to turn it off after the police recovered and returned the laptop – a scenario in which there was no intent to violate, or deliberate indifference to, Mr. Levin's privacy.

Because Mr. Levin cannot correct these pleading deficiencies, the Court should dismiss his Complaint with prejudice.

## II.   BACKGROUND

### A.   Mr. Levin Alleges That Because The District's Investigation Recovered Images That Had Been Taken By His Laptop, The District Must Have Been "Spying" On Him

At the relevant times, Mr. Levin was a student at Harriton High School ("Harriton"), a school within the District.[1]  (Compl. ¶ 4.)  In September 2008, the District issued to Harriton students, including Mr. Levin, laptop computers as part of its "one-to-one" laptop initiative, which was intended to enable "an authentic mobile 21st Century learning environment."  (Compl. ¶¶ 12-13.)  The laptops were equipped with webcams.  (Compl. ¶ 13.)

---

[1]     Defendants accept as true the facts pleaded in the Complaint solely for purposes of defendants' motion to dismiss.

The District "had the ability to remotely activate the webcams incorporated into each laptop issued to students" and thereby capture "whatever images [*sic*] were in front of the webcam." (Compl. ¶¶ 10, 15; *see also* id. ¶ 16.) The District did not disclose this ability to students or their parents/guardians. (Compl. ¶ 14.)

Mr. Levin alleges that he "kept the laptop in his bedroom, as well as throughout his mother's household and his father's household," and that his younger brother noticed that "the light in the camera would go on and off at odd times, wondering if the family was being 'spied on'." (Compl. ¶ 17.) According to Mr. Levin, he learned that the District had in fact captured webcam photographs from his laptop through letters from the District's counsel to Mr. Levin and his parents, dated June 8, 2010. (Compl. ¶ 18.) The letters stated that

> a recently completed investigation into the remote monitoring of laptop computers by the Lower Merion School District has revealed that the School District has captured webcam photographs and screenshots from a laptop that the District issued to . . . Joshua Levin. Specifically, 4,404 webcam photographs and 3,978 screenshots that were recovered in the investigation were taken from [his] laptop from September 22, 2008 to March 12, 2009.

(Compl. ¶ 18.) The letters further stated that "if [Mr. Levin] so chose," he could view the recovered images at a certain date and time at the United States Courthouse. (Compl. ¶ 19.) Mr. Levin opted to view the recovered images. (Compl. ¶ 20.) According to his Complaint, he "was shocked, humiliated and severely emotionally distressed at what he saw." (Compl. ¶ 20.) Yet, Mr. Levin provides no description whatsoever of what he saw.[2] He also does not allege that any

---

[2]     Within his invasion of privacy count, Mr. Levin speculatively and suggestively alleges that "[a]s the laptops at issue were routinely used by students and family members while at home, it is believed and therefore averred that many of the images captured and intercepted may consist of images of minors and their parents or friends in compromising or embarrassing positions, including, but not limited to, in various stages of dress or undress." (Compl. ¶ 58.) Tellingly, Mr. Levin does not allege any such thing about the

(continued...)

District personnel ever actually saw any of the images captured from his laptop.  Nor does he

allege any injury that arose prior to his viewing the images through the Court-directed process.

> **B.    Mr. Levin Refers To, But Disregards, The Court's Orders In *Robbins* And The Investigation Commissioned By The District, Which Included A Review Of The Circumstances That Gave Rise To The Monitoring Of His Laptop**

Although he acknowledges that the viewing opportunity was provided under the

auspices of the Court, Mr. Levin provides no further details of how it arose.  Full copies of the

letters sent to Mr. Levin and his parents (the "Viewing Letters"), from which Mr. Levin quotes

extensively (Compl. ¶ 18), are attached hereto as Exhibit A.[3]  The Viewing Letters explained that

under the supervision of Chief Magistrate Judge Thomas J. Rueter, the District's counsel worked

with counsel for the Robbinses, a group of concerned parents from the District, and the

American Civil Liberties Union to develop a process to enable students and their parents to view

the recovered images in a private and confidential setting.  (*See* Viewing Letters.)  The letters

further stated that only the District's outside counsel, forensic computer consultants, and

investigators had had access to the recovered images.  (*See* id.)

Such letters were sent to Mr. Levin and his parents, and other affected students

and parents/guardians, pursuant to orders entered by the Court in Robbins, et al. v. Lower

---

(...continued)
recovered images from ***his*** laptop, notwithstanding that he admittedly viewed those images and therefore is in a position to describe them.  In any event, this purely speculative allegation is irrelevant because images from other students' laptops have no bearing on Mr. Levin's claims.

[3]    The Court may consider on a motion to dismiss "a document integral to or explicitly relied upon in the complaint," and "[p]laintiffs cannot prevent a court from looking at the texts of the documents on which its [*sic*] claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  The Court also may consider "matters of public record."  *See* Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

<u>Merion School District, et al.</u>, No. 10-665 (E.D. Pa.), as part of the injunctive relief that the Court entered in that case for the benefit of all District families.[4]  (*See* Doc. No. 68 in <u>Robbins</u>, Ex. B hereto, ¶ 8; Doc. No. 67 in <u>Robbins</u>, Ex. C hereto.)  Among other broadly applicable injunctive relief that the Court provided were:  a restriction on the use of remote monitoring technology; a requirement that the District implement more robust policies and regulations concerning student laptops and privacy; and strict restrictions on access to the recovered images that had been remotely obtained from student laptops.  (*See* Doc. No. 68 in <u>Robbins</u>, ¶¶ 2-5, 7, & 9; *see also* <u>id.</u> ¶ 10 (rendering the relief enforceable by any adversely affected students or parents).)

The <u>Robbins</u> record also explains how the images at issue here were recovered. Upon learning of the Robbins allegations, the District commissioned an investigation by outside counsel and a computer forensic firm to determine the extent to which the District used the laptop tracking software and ascertain the extent to which there existed evidence of its use, such as webcam photographs.  (*See* Doc. No. 19 in <u>Robbins</u>, at 1 (order describing investigation); Doc. No. 43 in <u>Robbins</u>, ¶ 2 (order referring to progress and goals of investigation).)  The District publicly released the investigation reports prepared by outside counsel (the "Investigation Report") and the computer forensic consultants (the "L-3 Report"), respectively, and those reports were filed of record in <u>Robbins</u>.[5]  (*See* Doc. No. 81 and Exs. A & B thereto.)

---

[4]     The Court may take judicial notice of the orders.  *See* <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007) (stating that "judicial proceedings constitute public records" of which courts may take judicial notice).

[5]     The reports are available on the District's website at: <u>http://www.lmsd.org/documents/news/100503_ballard_spahr_report.pdf</u>, and <u>http://www.lmsd.org/documents/news/100503_l3_report.pdf</u>, with the voluminous

(continued...)

DMEAST #13946164 v3

The Investigation Report describes the circumstances in which the District activated the tracking software to obtain images from Mr. Levin's computer.  Although Mr. Levin does not acknowledge this in his Complaint, he and five other Harriton students reported their laptops stolen from a Harriton locker room on September 19, 2008.  (*See* Investig. Rept. at 52-53.[6])  Accordingly, the District activated the tracking feature for those computers, and the tracking fulfilled its purpose:  using the images and other information captured from the laptops, the Lower Merion Police Department recovered the laptops and returned them to the District on October 9, 2008.  (*See* id. at 53.)  Although the District returned the laptops to the students shortly thereafter, it neglected to deactivate tracking, and the webcams in the laptops continued to capture photographs periodically until March 12, 2009.  (*See* id. at 53-54.)  The Investigation Report notes that the investigation found no explanation for the failure to deactivate tracking, and concluded that this was a "major oversight."[7]  (Id. at 53-54.)

_____

(...continued)

appendices available at:
http://www.lmsd.org/documents/news/100504_ballard_spahr_appendices.pdf.

[6]    To protect student privacy, the Investigation Report identifies students by anonymous numbers, but given the numbers of webcam photographs and screenshots that Mr. Levin has alleged, he can be identified as "Student Number 83" in the report.  (Compl. ¶ 18; Investig. Rept. at 52.)

[7]    The Court may consider the Investigation Report to the extent Mr. Levin relies on it in his Complaint and because he had notice of the well-publicized report (*see* Compl. ¶ 18 (referring to the results of the investigation, as reported in the Viewing Letters, to allege that the number of recovered images captured from his laptop)).  *See* Burlington Coat Factory, 114 F.3d at 1426 (reasoning that "the primary problem raised by looking to documents outside the complaint [for purposes of a motion to dismiss] – lack of notice to the plaintiff – is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint") (citations, internal quotation marks, and alteration omitted); Pension Benefit Guar., 998 F.2d at 1196-97 ("When a complaint relies on a document . . . *the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished*.") (emphasis added).

(continued...)

The Investigation Report and the L-3 Report also explain that the images that had been taken by the laptops of Mr. Levin and certain other students were recovered from District computer equipment, which – once the tracking feature was activated by a District technician – captured and stored the images in an automated process without any human involvement.  (Id. at 18-20 ("TheftTrack did not permit an administrator to take a photograph from any computer's webcam . . . at any given moment on command; such images could be captured only through the automated process . . . ."); L-3 Rept. at 7-10, 40-42.)

It also bears noting that the United States Attorney publicly announced:

> After a thorough review of the evidence in this matter by my office, the Federal Bureau of Investigation, [and local prosecutors and law enforcement authorities], I have concluded that bringing criminal charges is not warranted in this matter. . . .  For the government to prosecute a criminal case, it must prove beyond a reasonable doubt that the person charged acted with criminal intent.  We have not found evidence that would establish beyond a reasonable doubt that anyone involved had criminal intent. . . . .

(U.S. Atty's Office/FBI Press Rel., Aug. 17, 2010, Ex. D hereto.)

## C.    **Mr. Levin Seeks Compensatory, Liquidated, And Punitive Damages**

Mr. Levin asserts seven purported causes of action:

(i)     invasion of privacy under Pennsylvania common law (Count VII);
(ii)    invasion of privacy under the Fourth Amendment (Count V);
(iii)   "interception of electronic communications" under the Federal Wiretapping Act (Count I);
(iv)    violation of the Pennsylvania Wiretapping Act (Count VI);
(v)     "theft of intellectual property" under the Computer Fraud and Abuse Act (Count II);
(vi)    violation of the Stored Communications Act (Count III); and
(vii)   violation of the Civil Rights Act (Count IV).

_____

(...continued)
As further discussed in the Argument section, below, however, regardless of whether the Court considers the findings set forth in the Investigation Report, Mr. Levin's Complaint should be dismissed because it is deficient on its face.

8

(Compl., Counts I-VII.)  In his Prayer for Relief, Mr. Levin seeks compensatory, liquidated, and punitive damages, as well as attorneys' fees and costs.  (Id., Prayer for Relief.)

## III.    ARGUMENT

### A.    Mr. Levin's Complaint Must Satisfy Stringent Standards To Avoid Dismissal

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Indeed, Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of entitlement to relief."  Twombly, 550 U.S. at 556 n.3.  Thus, to survive a motion to dismiss, Mr. Levin's Complaint "must allege facts that 'raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  Id. at 555 (internal citations omitted); see also Iqbal, 129 S. Ct. at 1953.  In other words, if Mr. Levin's Complaint "pleads facts that are 'merely consistent with' a defendant's liability, [without "further factual enhancement"] it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly); Twombly, 550 U.S. at 557.

In addition, the Court should disregard Mr. Levin's "legal conclusions" and "bald assertions."  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); see also Iqbal, 129 S. Ct. at 1940, 1949; Twombly, 550 U.S. at 557 (stating that a complaint that offers

mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions" should be dismissed).

As further discussed below, Mr. Levin's Complaint should be dismissed with prejudice because it does not and cannot plead its claims under these standards.

**B.     The Pennsylvania Tort Claims Act Immunizes The District From Mr. Levin's Common Law Invasion of Privacy Claim**

In Pennsylvania law, an invasion of privacy claim lies against "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . , if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977); *see also* Jenkins v. Bolla, 600 A.2d 1293, 1295 (Pa. Super. Ct. 1992) (recognizing the adoption of Section 652). Thus, invasion of privacy requires ***intentional*** action. The Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act") immunizes the District from such claims.

The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. There are exceptions only for eight specifically enumerated "negligent acts":

      (i)      vehicle liability;
      (ii)     care, custody, or control of personal property;
      (iii)    care, custody, or control of real property;
      (iv)    negligent maintenance of trees, traffic controls and street lighting;
      (v)     negligent maintenance of utility service facilities;
      (vi)    negligent maintenance of streets;
      (vii)   negligent maintenance of sidewalks; and
      (viii)  care, custody, or control of animals

42 Pa. C.S. § 8542(1)-(8). Because the District is a "local agency" and none of the "negligent act" exceptions applies here – because invasion of privacy is an intentional tort – the Tort Claims Act bars Mr. Levin's common law invasion of privacy claim.

Indeed, this Court has held that the Tort Claims Act immunizes school districts and their officials who are sued in their official capacities from common law privacy and other state law claims.  *See* Smith v. School Dist. of Phila., 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000) (DuBois, J.); *see also* Klump v. Nazareth Area Sch. Dist., 425 F. Supp. 2d 622 (E.D. Pa. 2006). In Klump, a high school student brought an invasion of privacy claim against a school district after it allegedly confiscated his mobile phone and reviewed his text messages.  *See* id. at 630-31.  Judge Gardner granted the district's motion to dismiss the claim, explaining that the Tort Claims Act "applies to defendant school district because school districts are local agencies entitled to protection under the provision," and that "none of the exceptions in 42 Pa. C.S.A. § 8542 apply in this case because the actions alleged are intentional rather than negligent."  Id. at 636; *see also* Henly v. Octorara Area Sch. Dist., 701 F. Supp. 545, 552 (E.D. Pa. 1988) (applying immunity to slander, abuse of process, gross negligence, and intentional infliction of emotional distress claims against a school district).

These cases are consistent with Pennsylvania courts' strict interpretation of the "negligent act" exceptions set forth in the Tort Claims Act.  *See, e.g.*, Love v. City of Phila., 543 A.2d 531, 532 (Pa. 1988) ("Local agencies are immune from tort liability except for certain specific exceptions enumerated in the Political Subdivision Tort Claims Act." ); Mascaro v. Youth Study Center, 523 A.2d 1118, 1120 (Pa. 1987) (noting that liability may only be imposed if injury occurs as a result of one of eight acts enumerated in the Tort Claims Act).

Accordingly, the Court should dismiss Mr. Levin's common law privacy claim with prejudice.

**C.**   **Mr. Levin's Allegations Do Not Implicate The Wiretapping Acts**

The Court should dismiss Mr. Levin's claims under the Pennsylvania and Federal Wiretapping Acts because they do not apply to the conduct Mr. Levin has alleged.  They prohibit

11

the intentional interception of "communications,"  but the webcam photographs that Mr. Levin

complains of are not "communications."  Moreover, the Tort Claims Act immunizes the District

from claims under the Pennsylvania Wiretapping Act.

**1.      The Webcam Photographs From Mr. Levin's Laptop Are Not "Communications" Under The Wiretapping Acts**

The Federal Wiretapping Act prohibits the intentional interception of "any wire,

oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Similarly, the Pennsylvania

Wiretapping Act forbids the intentional interception of "any wire, electronic or oral

communication."  18 Pa. C.S. § 5703(1).  Mr. Levin alleges that the webcam images captured

from his laptop constitute "electronic communications" that the District "intercepted" in

violation of the Wiretapping Acts.  (Compl. ¶¶ 26, 28, 64.)  The law provides otherwise.

Every federal circuit court to have considered the issue has held that videographic

surveillance alone, absent an audio component, is not a "communication" under the Federal

Wiretapping Act.  *See, e.g.*, U.S. v. Larios, 593 F.3d 82, 90 (1st Cir. 2010), *cert. denied*, 130 S.

Ct. (2010) (noting that "[e]very circuit court to address the issue has concluded that [the ECPA]

does not regulate silent video surveillance," and "agree[ing] with our sister circuits that, by its

plain meaning, the text of [the Federal Wiretapping Act] does not apply to silent video

surveillance"); U.S. v. Torres, 751 F.2d 875, 880 (7th Cir. 1984) ("Television surveillance (with

no soundtrack) just is not within the statute's domain."); U.S. v. Falls, 34 F.3d 674, 679 (8th Cir.

1994) ("[A]gain, we find that every circuit court to have addressed this issue has concluded that

[the Federal Wiretapping Act does not] regulate [or] prohibit domestic silent video

surveillance."); U.S. v. Koyomejian, 970 F.2d 536, 539 (9th Cir. 1992) (quoting the statutory

definitions of "wire, electronic, or oral communications," and holding that, by "their plain

meaning, these definitions do not apply to silent video surveillance").

The same analysis applies under the Pennsylvania Wiretapping Act. *See* Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 n.6 (3d Cir. 2003) (stating that because the Pennsylvania Wiretapping Act "is interpreted in the same way as the [Federal Wiretapping Act], the analysis and conclusions" under the latter "apply equally to this state-law claim").

Several appellate courts have explained that the rule that purely image-based surveillance, without audio, is not a "communication" under the Wiretapping Acts comports with the common-sense notion that a person being photographed without his or her knowledge is not communicating simply by virtue of being photographed. In Torres, government investigators videotaped without recording audio a group of people assembling bombs in a private apartment. 751 F.2d at 877. Rejecting the argument that this conduct implicated the Federal Wiretapping Act, Judge Posner wrote that a "man televised while silently making a bomb is not engaged in any form of communication." Id. at 880; *see also* U.S. v. Westberry, No. 98-6458, 2000 WL 799787, at *2 (6th Cir. June 13, 2000) (holding that a person "who is videotaped while silently cultivating marijuana is not engaged in any form of communication").

Because Mr. Levin does not and cannot allege that the District recorded any audio with the webcam photographs captured from his laptop (*see* Compl. ¶¶ 10 & 16), he cannot state a claim under either of the Wiretapping Acts.

> **2.      Even If The Pennsylvania Wiretapping Act Applied To Mr. Levin's Allegations, The Claim Would Fail Because The Tort Claims Act Immunizes The District From Such Claims**

Mr. Levin's Pennsylvania Wiretapping Act claim fails for a separate, additional reason: the Tort Claims Act immunizes the District from liability for this claim. As set forth above (*see* § III(B), *supra*), the Tort Claims Act provides that local agencies, such as school districts, can be liable for damages for injury to a person or property only for eight specific types of negligent conduct. *See* 42 Pa. C.S. §§ 8541-8542. Wiretapping Act claims, however, require

13

intentional conduct.  *See* 18 Pa. C.S. § 5703.  Accordingly, the Tort Claims Act immunizes

public school districts from Pennsylvania Wiretapping Act Claims.  *See* <u>Klump</u>, 425 F. Supp 2d

622 (holding that a school district was immune from a Pennsylvania Wiretapping Act claim

arising from its review of a student's personal text messages); <u>Walsh v. Krantz</u>, No. 07-619,

2008 WL 3981492 (M.D. Pa. Aug. 22, 2008) (dismissing under the Tort Claims Act a

Pennsylvania Wiretapping Act claim arising from a public school district's alleged blocking of,

and eavesdropping on, telephone calls between a student and his father), *aff'd*, 386 Fed. App'x

334 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 801 (2010).  Accordingly, the Tort Claims Act gives

the Court another basis to dismiss Mr. Levin's Pennsylvania Wiretapping Act claim with

prejudice.

      **D.**      **<u>The Stored Communications Act Does Not Apply To Webcam Photographs</u>**

      Like the Wiretapping Acts, the SCA does not apply to Mr. Levin's allegations.

      The SCA forbids "intentionally [accessing] without authorization a facility

through which an electronic communication service is provided" or "intentionally [exceeding] an

authorization to access that facility" and thereby obtaining access to "a wire or electronic

communication while it is in storage in such system."  18 U.S.C. § 2701(a)(1)-(2).  The SCA

defines "electronic communication service" as "any service which provides to users thereof the

ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).

      Mr. Levin conclusorily alleges that "the webcam images complained of are

'electronic communications' within the meaning of the SCA," and that the "use of the

software/hardware to remotely activate the webcams complained of and to obtain their images

constitutes an unauthorized acquisition of stored electronic communications in violation of the

SCA."  (Compl. ¶¶  43 & 46.)  These contentions fail for at least three independent reasons.

First, the webcam photographs are not "electronic communications" under the SCA. Indeed, the SCA expressly borrows the definition of "electronic communications" from the Federal Wiretapping Act. *See* 18 U.S.C. § 2711(1). As discussed above (*see* § III(C)(1), *supra*), federal courts have made clear that photographic surveillance without audio does not qualify as a "communication" under that definition.

Second, Mr. Levin does not and cannot allege that the District obtained access to materials in "electronic storage," as he must to state an SCA claim. *See* 18 U.S.C. § 2701(a). Indeed, he does not allege that the District accessed images that had been ***stored*** on his computer. Rather, he asserts that his laptop's webcam captured images of "anything ***happening in the room*** in which the laptop was located." (Compl. ¶ 16 (emphasis added).)

Third, Mr. Levin's claim hinges on the incorrect assumption that his District-issued laptop was a "facility through which an electronic communication service is provided." (*See* Compl. ¶¶ 41-47.) Courts have consistently held that personal computers are not "facilities" under the SCA. For example, in U.S. v. Steiger, 318 F.3d 1039, 1049 (11th Cir. 2003), the Eleventh Circuit held that the SCA did not apply to allegations of "hacking into [an individual's] computer to download images and identify[] information stored on his hard-drive" because the computer did not maintain any "electronic communication service" as defined in the SCA, 18 U.S.C. § 2510(15). By way of example, the court explained that the SCA would apply "to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system" – *i.e.*, entities that provide electronic communication services. Id.

The decision in In re Pharmatrak, Inc. Privacy Litigation, 220 F. Supp. 2d 4 (D. Mass. 2002), *rev'd on other grounds*, 329 F.3d 9 (1st Cir. 2003), is likewise instructive. In that case, the plaintiff asserted that the defendants violated the SCA by "accessing data in plaintiff's

15

computers, including the content of plaintiff's emails," and argued that personal computers

qualified as "facilities" because they "provide consumers with the opportunity to access the

Internet and send or receive electronic communications," and that "[w]ithout personal

computers, most consumers would not be able to access the Internet or electronic

communications.'"  220 F. Supp. 2d at 13 (quoting plaintiff's opposition to motion to dismiss).

The court rejected that argument,  holding that while "personal computers are necessary devices

by which consumers connect to the Internet," the "relevant *service* is Internet access, and the

service is provided through ISPs or other servers, not through Plaintiff's PCs."  Id. (emphasis in

original).  *See also* Crowley v. Cybersource Corp., 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001)

(explaining that Congress could not have meant "facility through which an electronic

communication service is provided" to include personal computers because, in light of other

provisions of the SCA, that would create absurd results, such as allowing ISPs to authorize third

parties to access data stored on the ISPs' customers' personal computers).

 For each of these reasons, Mr. Levin cannot state a claim under the SCA.

### E. The Computer Fraud And Abuse Act's Cause Of Action Applies Only To Financial Loss Or Technological Damages

 The CFAA does not apply because the cause of action it provides is available only

to plaintiffs who have suffered financial losses of a sort Mr. Levin does not and cannot allege.

 The CFAA prohibits unauthorized access or damage to government or financial

computer systems for the purposes of espionage, financial gain, or malicious hacking.  *See* 18

U.S.C. § 1030.  Mr. Levin purports to bring his CFAA claim under a provision of the statute that

forbids parties from intentionally accessing or exceeding authorized access to a "protected

computer."[8]  (*See* Compl. ¶¶ 35-37 (citing 18 U.S.C. § 1030(a)(2)).)   The CFAA defines

"protected computer" to include a computer "used in or affecting interstate or foreign

commerce."  18 U.S.C. § 1030(e)(2)(B).  Mr. Levin contends that the District exceeded its

authorized access to a "protected computer" by "remotely activat[ing] the webcams complained

of and intercept[ing] their images."  (Compl. ¶¶ 36-37.)

   Mr. Levin partially quotes the portion of the CFAA that provides a private right of

action in certain limited circumstances, but he does not and cannot allege that any of those

circumstances apply here.  (*See* Compl. ¶ 35 (citing 18 U.S.C. § 1030(g)).)

> The CFAA provides:
>
> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  ***A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).***  Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g) (emphasis added).  Thus, the CFAA provides a private right of action only

to those who incur "damage or loss" from an alleged violation, and then only if the conduct at

issue involves one of the factors enumerated in Section 1030(c)(4)(A)(i).  Although Mr. Levin

quotes extensively from Section 1030(g), he makes no reference to these limitations.  The factors

enumerated in Section 1030(c)(4)(A)(i) are:

---

[8]   Mr. Levin quotes from a superseded provision of the CFAA, which prohibited unauthorized access to a "protected computer if the conduct involved an interstate or foreign communication."  (*See* Compl. ¶ 35 (citing 18 U.S.C. § 1030).)  In 2008, Congress amended the CFAA to remove the requirement that the conduct involve "an interstate or foreign communication."  *See* 18 U.S.C. § 1030(a)(2)(C).

| (I) | Financial loss in the aggregate of at least $5,000 to one or more persons during any one year period; |
|---|---|
| (II) | The modification or impairment of medical care; |
| (III) | Physical injury to any person; |
| (IV) | A threat to public health or safety; and |
| (V) | Damage to a government computer used for justice, national defense, or national security. |

18 U.S.C. § 1030(c)(4)(A)(i).  Moreover, damages for a violation of section (I) are expressly

limited to "economic damages."  18 U.S.C. § 1030(g).

In addition, the CFAA defines "damage" as "any impairment to the integrity or

availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  And the

CFAA defines "loss" as

> any reasonable cost to any victim, including the cost of responding to an
> offense, conducting a damages assessment, and restoring the data,
> program, system or other information to its condition prior to the offense,
> and any revenue lost, cost incurred, or other consequential damages
> incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).  Courts interpreting the CFAA have universally concluded that "the

meaning of loss under the statute must pertain to a 'cost of investigating or remedying damages

to a computer, or a cost incurred because the computer's service was interrupted.'"  Chas S.

Winner, Inc. v. Polistina, No. 06-4865, 2007 WL 1652292, at *4 (D.N.J. June 4, 2007)

(dismissing CFAA claim and quoting Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d

468, 475 (S.D.N.Y. 2004), aff'd, 166 Fed. App'x 559, 562 (2d Cir. 2006)); see also Clinton

Plumbing and Heating of Trenton, Inc. v. Ciacco, No. 09-2751, 2010 WL 4224473, at *7 (E.D.

Pa. Oct. 22, 2010) (holding that the alleged harm was not a "loss" under the CFAA because it

"did not arise from investigating computer damage, remedying or responding to damages done,

or costs incurred while the computer was impaired," and therefore dismissing claim); Wilson v.

Moreau, 440 F. Supp. 2d 81, 109-10 (D.R.I. 2006), aff'd 492 F.3d 50 (1st Cir. 2007) (rejecting

plaintiffs' argument that their litigation costs counted as "damage or loss").

18

Mr. Levin does not and cannot allege any of the circumstances that can give rise to a private cause of action under the CFAA.  With respect to factor (I), he does not allege that the District caused him at least $5,000 in economic damages to the integrity of computer data or programs, nor can he; even if there were any technical damage to the laptop (which is not alleged), the District, and not Mr. Levin, owned it.  In fact, Mr. Levin has not alleged that he suffered economic damages of any sort.  Nor has he alleged or can he allege that the District's conduct resulted in a modification or impairment of medical care (factor II), caused physical injury (factor III), constituted a threat to public safety (factor IV), or caused damage to a government computer used for justice, national defense, or national security (factor V).

Accordingly, CFAA does not provide a private cause of action for these circumstances, and the Court should dismiss Mr. Levin's claim with prejudice.

**F.**     **Mr. Levin Does Not State Claim Under Section 1983 Of The Civil Rights Act**

Section 1983 of the Civil Rights Act "is itself not a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  Baker v. McCollan, 443 U.S. 137, 145 (1979).  A Section 1983 claim requires:  (i) a violation of rights secured by the Constitution and the laws of the United States; and (ii) that the deprivation of rights was committed by a person acting under color of state law.  City of Okla. City v. Tuttle, 471 U.S. 808, 817 (1985).  For a municipal entity, such as a school district, to be held liable under Section 1983, a plaintiff also must show that his harm resulted from a policy or custom attributable to the entity.  Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see also, e.g., Huggins v. Coatesville Area Sch. Dist., No. 07-4917, 2008 WL 4072801 (E.D. Pa. Aug. 27, 2008) (dismissing Section 1983 claim against school district because plaintiff failed to allege that he was injured as a result of any policy or custom).  Moreover, a plaintiff must plead that the entity intentionally violated a constitutional right or maintained an unlawful policy or

19

custom with "deliberate indifference" to the constitutional deprivation that the policy or custom allegedly caused.  *See* City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Mr. Levin alleges that the District's "clandestine remote activation of the webcams complained of deprived Plaintiff of his right to privacy as protected by the Fourth Amendment of the United States," and that the District acted under color of state law in doing so, thus giving rise to a Section 1983 claim.  (Compl. ¶¶ 50-51.)

As discussed below, the claim should be dismissed because:  (i) Mr. Levin has not pleaded a constitutionally protected right; (ii) Mr. Levin has not pleaded that the District had in place an unlawful "policy" or "custom"; and (iii) Mr. Levin has not pleaded that the District acted with intent or deliberate indifference to a constitutional right.[9]

### 1.    Mr. Levin Does Not Plead A Constitutionally Protected Right

"The first step to any Section 1983 claim is to identify the specific constitutional right allegedly infringed."  Smith, 112 F. Supp. 2d at 430 (citing Albright v. Oliver, 510 U.S. 266, 271 (1994)).  Here, Mr. Levin alleges that the District deprived him of "his right to privacy as protected by the Fourth Amendment." (Compl. ¶ 51.)  But Mr. Levin's allegations do not implicate that right.

The Supreme Court defines the right to privacy as extending to matters relating to marriage, procreation, contraception, family relationships, and child rearing.  *See* Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000) (citing cases); *see also* Doe v. Luzerne County, No. 08-1155, 2010 WL 3517058, at *5 (M.D. Pa. Aug. 31, 2010) ("The Supreme Court

---

[9]    Mr. Levin seeks punitive damages under Section 1983 (Compl. ¶ 53), but punitive damages are not available against a municipal entity, such as a school district, in a Section 1983 action.  *See* Klump, 425 F. Supp. 2d at 643 (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)).

DMEAST #13946164 v3

has held that the constitutional right to privacy encompasses an individual's autonomy in making choices about intimate matters and an individual's interest in avoiding the disclosure of highly personal information.") (citing <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600 (1977)).  Mr. Levin does not allege that the District's conduct impinged on any of these interests.

The Eleventh Circuit's decision in <u>Carroll v. Parks</u>, 755 F. 2d 1455, 1456 (11th Cir. 1985), is persuasive here.  In that case, a high school student alleged that a school board allowed to be printed in a school yearbook a photograph of him with his genitalia exposed, accompanied by a lurid caption.  The court noted that the Constitution does not create a blanket right of privacy; instead courts have recognized limited zones of privacy, none of which is a "constitutional right to be free of public embarrassment or damage to [one's] reputation."  <u>Id.</u> at 1456-57.  Thus, although the conduct may have been "deplorable, reprehensible, and insensitive, [the plaintiff] simply has not stated a federal constitutional deprivation."  <u>Id.</u> at 1457.

Similarly, the court in <u>Doe v. Luzerne County</u> ruled that the conduct of a deputy sheriff, who took photographs and video of a female colleague showering, showed the video to other colleagues, and placed the photographs on a county-wide server, was "tasteless, unwise, and unwarranted," but did not "rise to the level of a constitutional violation." 2010 WL 3517058, at *5-6 (noting that the right of privacy "extended to marriage, procreation, contraception, family relationships, and child rearing"); *see also, e.g.*, <u>Davis v. Bucher</u>, 853 F.2d 718, 721 (9th Cir. 1988) (concluding that the actions of a correctional officer, who exhibited nude photos of an inmate's wife, did not "demand[] a constitutional response" under Section 1983); <u>Newhards v. Borders</u>, 649 F. Supp. 2d 440, 450 (W.D. Va. 2009) (finding that police officers, who during an arrest found nude photographs of the arrestee and his former girlfriend in a compromising position and allegedly shared them with other officers, did not violate any clearly established

21

constitutional right); Lapka v. Cairns, No. 91-2159, 1993 WL 289161, at *4 (D. Kan. July 22, 1993) (finding that a deputy sheriff's distribution photographs of a judge nude and in a revealing "Beastmaster" costume did not state any legally cognizable constitutional injury).

To be clear, Mr. Levin has alleged ***nothing*** substantively about what the photographs taken by his laptop contained, much less that anyone ever even saw the photographs. It is equally clear, though, that like the plaintiffs in the cases discussed above, Mr. Levin does not and cannot plead a violation of his constitutional right of privacy.

Even if Mr. Levin had pleaded the violation of a cognizable constitutional right, however, his Section 1983 claim would fail for the two additional reasons set forth below.

### 2.   Mr. Levin Does Not Plead That The District Had In Place An Unlawful "Policy" Or "Custom"

To state a claim against the District, Mr. Levin must meet the "rigorous standards of culpability and causation required for municipal liability." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (internal quotation marks omitted). He must plead with specificity that the District had in place a policy, practice, or custom that caused him to be deprived of his constitutional right to privacy. *See* Monell, 436 U.S. at 691-95; *see also* McTernan, 564 F.3d at 658 ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and ***specify what exactly that custom or policy was***.") (emphasis added). Indeed, Section 1983 liability cannot be premised on *respondeat superior*. Rather, "it is only when the execution of the government's policy or custom . . . inflicts the injury that [a] municipality may be held liable under § 1983." Harris, 489 U.S. at 385 (internal quotation marks and citation omitted); *see also* Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996) ("A plaintiff must also establish that the government policy or custom was the proximate cause of the injuries sustained."). Moreover, Mr. Levin must allege conduct by a municipal decisionmaker. Id.

Mr. Levin's Complaint does not satisfy these heightened requirements. As an initial matter, Mr. Levin does not allege any conduct by any District decisionmaker.  In the five substantive paragraphs of his Section 1983 count (and throughout the Complaint), he refers to the "defendants" collectively and does not allege any conduct by any particular District decisionmaker (with the immaterial exception of the assertion that Dr. McGinley merely sent families a letter introducing the one-to-one laptop program, *see* Compl. ¶ 12).  This failure alone warrants dismissal.  *See* McTernan, 564 F.3d at 658-59.

Equally fatal is Mr. Levin's failure to allege a policy or custom.

A "policy" is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict."  Kneipp, 95 F.3d at 1212 (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  Mr. Levin does not and cannot allege that the District or the Board (about which he makes no factual allegations whatsoever) ever established a policy of "spying" on students.  To the contrary, in fact, Mr. Levin alleges that the District's remote activation of Mr. Levin's laptop webcam was "indiscriminant" [*sic*].  (Compl. ¶ 10.)

A "custom" exists only when there is evidence that the practice is permanent and well settled, and that the decisionmaker had knowledge of or acquiesced in the unlawful practice. *See* Young v. City of Allentown, 882 F. Supp. 1490, 1494 (E.D. Pa. 1995).  Thus, to prove a "custom," the plaintiff must establish "that policymakers ***were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure . . . led to [plaintiff's] injury***."[10]  Turner v. City of Philadelphia, 22 F. Supp. 2d 434, 437

---

[10]  A "policymaker" is an official with final, unreviewable discretion to make a decision or take action.  *See* Kneipp, 95 F.3d at 1213.

DMEAST #13946164 v3

(E.D. Pa. 1988) (quoting <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 851 (3rd Cir. 1990) (emphasis

added)); *see also* <u>Credico v. Commonwealth of Pa. State Police</u>, No. 09-691, 2010 WL 331700,

at *5 (E.D. Pa. Jan. 27, 2010) (stating that a plaintiff must allege that a decisionmaker was

"aware of the constitutional deprivations and of the alternatives for preventing them, but either

deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or

custom of inaction in this regard") (internal quotation marks and citation omitted).  Moreover,

isolated incidents do not establish the existence of a custom.  <u>Tuttle</u>, 471 U.S. at 808 (holding

that a single incident of use of excessive force by police officer did not establish policy or

custom); <u>Walker-Serrano v. Leonard</u>, 168 F. Supp. 2d 332, 346 (M.D. Pa. 2001) (holding that a

ban on petitions at an elementary school did not establish a custom for purposes of Section

1983); <u>De Falco v. Deer Lake Sch. Dist.</u>, 663 F. Supp. 1108, 1100 (W.D. Pa. 1987) (holding that

plaintiff failed to state a Section 1983 claim against school district because a single incident of

failure to train its employees did not establish a policy or custom).

      Mr. Levin does not allege at all – much less with the plausibility required by <u>Iqbal</u>

and <u>Twombly</u> – that any District policymakers were aware of any unlawful conduct and failed to

take precautions, or that any such failures caused him harm.[11]  This is another basis for dismissal.

*See, e.g.*, <u>McTernan</u>, 564 F.3d at 636 (affirming dismissal of Section 1983 claim because

complaint "alleges nothing more than directives issued *ad hoc* by individual officers, without

reference to any formal administrative or policy channels"); <u>Davis v. City of Phila.</u>, No. 05-4571,

---

[11]    Although the Court need not consider it because the Complaint is deficient on its face, the
Investigation Report is inconsistent with any suggestion of a "custom" that could have
harmed Mr. Levin; it reported no evidence that the Board or District policymakers knew
of the potential privacy concerns that the District's remote monitoring capabilities could
raise.  (Investig. Rept. at 3, 36-40.)

2010 WL 2461777, at *4 (E.D. Pa. Aug. 11, 2009) (O'Neill, J.) (holding that "without an allegation connecting a specific policymaker to the custom at issue, . . . [plaintiff's] complaint does not rise above the formulaic recitation of the elements of a cause which are insufficient to state a claim under Federal Rule of Civil Procedure 8(a)(2)") (internal quotation marks and citation omitted).

### 3.    Mr. Levin Does Not Plead That The District Acted With Intent Or Deliberate Indifference

Even if Mr. Levin had pleaded a cognizable constitutional right and an unlawful policy or custom, his Section 1983 claim would fail because he does not allege, as he must to survive a motion to dismiss, that the District intentionally deprived him of, or acted with deliberate indifference to, a constitutional right.

Mere negligence is insufficient to establish a constitutional deprivation.  Daniels v. Williams, 474 U.S. 327, 333 (1995) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution"); *see also, e.g.*, Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992) ("[A Section 1983 claim] must be predicated upon a '*deliberate*' deprivation of constitutional rights by the defendant. . . .  It cannot be predicated upon negligence.") (emphasis in original); Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1446-47 (10th Cir. 1990) (holding that a car accident caused by police negligence did not give rise to a [Section 1983] claim); Guffey vs. Trago, 572 F. Supp. 782, 784 (N.D. Ind. 1983) (stating that "[t]he general rule has long been that negligent actions do not ordinarily state a claim under Section 1983 and that an intentional act on the part of a defendant is generally necessary to state a claim under § 1983," and citing Estelle vs. Gamble, 429 U.S. 97 (1976)).

Rather, to state a claim against the District, Mr. Levin must allege that the District either intentionally violated a constitutional right or maintained an unlawful policy or custom

25

with "deliberate indifference" to the constitutional deprivation that the policy or custom allegedly caused.  *See, e.g.*, Harris, 489 U.S. at 389.  Deliberate indifference requires "something more culpable . . . than a negligent failure to recognize a high risk of harm to plaintiffs."  Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting Colburn v. Upper Darby, 946 F.2d 1017, 1025 (3d Cir. 1991)).  It may be established by evidence that decisionmakers were aware of the constitutional deprivations and the alternatives for preventing them, "but either deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard."  Simmons v. City of Phila., 947 F.2d 1042, 1064 (3rd Cir. 1991) (footnote omitted); *see also* Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.").

The Complaint falls far short of making a factual showing, as required by Iqbal and Twombly, that either intentional conduct or deliberate indifference gave rise to the webcam photographs that were ultimately recovered in the District-commissioned investigation.  Mr. Levin offers only bald conclusions about the defendants' supposed level of culpability.  (*See, e.g.*, Compl. ¶ 53 ("Defendants' conduct in remotely activating the webcams complained of, which resulted in the deprivation of Plaintiff's constitutionally protected right to privacy was intentional, extreme and outrageous.").)  As discussed in greater detail above (*see* § II(A), *supra*), Mr. Levin bases his conclusion that the District intentionally spied on him solely on the fact that the District's investigation recovered webcam photographs that had been taken by his

DMEAST #13946164 v3

laptop.  But it is purely speculative – without further factual enhancement, which Mr. Levin

cannot provide – to conclude based on that fact that the existence of the photographs was

anything but a regrettable accident, or that anyone at the District ever intended that any of those

photographs be taken, or that the District or the Board considered (much less acted with

deliberate indifference to) Mr. Levin's privacy, or that ***anyone*** ever saw the photographs or even

knew they existed until they were recovered in the investigation.  Indeed, the fact that the

photographs were recovered is equally consistent with the conclusion that the District acted

merely negligently in allowing the photographs to be captured.  (*See* § II(B), *supra* (discussing

findings of Investigation Report and L-3 Report).)  Accordingly, under <u>Iqbal</u> and <u>Twombly</u>, *see*

§ III(A), *supra*, the Court should dismiss Mr. Levin's Section 1983 claim.

### G.    Mr. Levin's Fourth Amendment Claim For Invasion Of Privacy Fails Because There Is No Such Cause of Action

Mr. Levin's purported claim asserted directly under the Fourth Amendment

should be dismissed because Section 1983 is the exclusive vehicle for alleged deprivations of

constitutional rights by state actors.  Indeed, as this Court has held, "such [direct constitutional]

claims are impermissible because § 1983 provides an adequate, alternative remedial scheme for

plaintiff's alleged constitutional violations."  <u>Smith</u>, 112 F. Supp. 2d at 430 (citing <u>Bivens v. Six</u>

<u>Unknown Named Federal Narcotics Agents</u>, 403 U.S. 388 (1971), and other cases); *see also*

<u>Rogin v. Bensalem Twp.</u>, 616 F.2d 680, 686-87 (3d Cir. 1980) (stating that "it would be a

redundant and wasteful use of judicial resources to permit the adjudication of both direct

constitutional and § 1983 claims where the latter wholly subsume the former").

Thus, the Court should dismiss Mr. Levin's Fourth Amendment invasion of

privacy claim.

27

## IV.     CONCLUSION

Mr. Levin's Complaint arises from a situation that is unfortunate but that does not give rise to any actionable harms.  For these and all the foregoing reasons, the Court should grant the District's Motion and dismiss Mr. Levin's Complaint with prejudice.

Respectfully submitted,

Date:  August 9, 2011               /s/ *Paul Lantieri III*
                                    Henry E. Hockeimer, Jr.
                                    Paul Lantieri III
                                    William B. Igoe
                                    Tejal K. Mehta
                                    Ballard Spahr LLP
                                    1735 Market Street, 51st Floor
                                    Philadelphia, Pennsylvania  19103-7599
                                    Tel.    215.665.8500
                                    Fax:    215.864.8999
                                    HockeimerH@ballardspahr.com
                                    LantieriP@ballardspahr.com
                                    IgoeW@ballardspahr.com
                                    MehtaT@ballardspahr.com

                                    *Counsel for Defendants*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused the foregoing Defendants' Motion to

Dismiss Plaintiff's Complaint to be served upon the below-listed counsel by ECF, and such

document is available for viewing and downloading from the ECF system:

> Norman Perlberger, Esquire.
> Perlberger Law Associates, P.C.
> One Presidential Boulevard – Suite 315
> Bala Cynwyd, PA 19004
> <u>perlberglaw@aol.com</u>
> *Counsel for Plaintiff*

Date: August 9, 2011

> /s/ *Paul Lantieri III*
> Paul Lantieri III